# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM YOUNG SUTHERLAND,<br><br>    Plaintiff,<br><br>    v.<br><br>J. CLARK KELSO, et al.,<br><br>    Defendants. | CASE NO. 1:09-cv-02028-OWW-SKO PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM UNDER SECTION 1983<br><br>(Doc. 10)<br><br>THIRTY-DAY OBJECTION PERIOD |

**Findings and Recommendations Following Screening of Amended Complaint**

## I.  Procedural History

Plaintiff William Young Sutherland, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on November 19, 2009. On February 3, 2011, the Court dismissed Plaintiff's complaint, with leave to amend, for failure to state any claims under section 1983. Plaintiff filed an amended complaint on March 7, 2011.

## II.  Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, __ U.S. __, __, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 129 S.Ct. at 1949.

Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 129 S.Ct. at 1949-50; Moss, 572 F.3d at 969.

### III. Plaintiff's Amended Complaint

#### A. Summary of Allegations

Plaintiff, who suffers from a degenerative neck and back problem that is debilitating if not treated with pain medication, was transferred to Pleasant Valley State Prison (PVSP) in Coalinga, California on January 13, 2009. Plaintiff seeks to impose liability on the PVSP Medical Department, California Department of Corrections and Rehabilitation Health Care Services Chief J. Walker, PVSP Warden James Yates, PVSP Chief Medical Officer F. Igbinosa, and PVSP Pharmacist-in-Charge C. Yun for violating his rights under the Eighth Amendment of the United States Constitution.

Upon his arrival at PVSP, Plaintiff was initially placed in the orientation unit, where he was repeatedly denied his medication, leaving him to suffer in pain. Plaintiff was released from the orientation unit on January 30, 2009, and he received his medication regularly until February 14,

2009, when the medication was stopped abruptly with no explanation. Plaintiff wrote to the medical department and then filed an inmate appeal on March 3, 2009, but the appeal was subsequently denied at every level. During this time period, Plaintiff asked medical staff members Roman, Didi, Morra, and Gonzalez for assistance and they told him that they would look into the situation, but he each time he followed up with them, they said they forgot.

On March 5, 2009, Plaintiff saw Dr. Rohrdanz, who ordered an orthopedic pillow to help Plaintiff sleep at night, a number of tests, and a refill of Plaintiff's pain medications. When Plaintiff made Dr. Rohrdanz aware that he had been deprived of his pain medication for three weeks, Dr. Rohrdanz assured him it would be reissued immediately. However, it took five days for one of the medications to be refilled and twenty-one days for the other medication to be refilled. The orthopedic pillow was not issued to Plaintiff until June 6, 2009. On May 1, 2009, Plaintiff saw Dr. Paja, who reordered Plaintiff's pain medication. It took fourteen days for that refill to occur.

During this time period, Plaintiff's appeal was being partially granted at each level but the key issue of delay was avoided. On May 10, 2009, Plaintiff was interviewed by Defendant Yun, the pharmacist-in-charge, but he failed to address the issue of Plaintiff's non-receipt of his medication in a timely manner. Defendant Yun referenced the dates the medications were ordered but not the failure to timely dispense them to Plaintiff.

On June 5, 2009, Plaintiff's pain medication was again stopped, and on June 14, 2009, Plaintiff submitted a request for an interview, stating that he was without his pain medication and was in extreme pain. On June 18, 2009, Plaintiff again saw Dr. Paja who reordered Plaintiff's pain medication and tests; the medication order was never filled.

On June 25, 2009, Defendant Igbinosa responded to Plaintiff's appeal in a hostile, antagonistic manner. Defendant Igbinosa attacked Plaintiff's request that his pain medication be refilled in a timely manner and his other health care requests, which demonstrated disregard for Plaintiff's well-being.

On July 12, 2009, while getting out of bed, extreme pain shot down Plaintiff's left arm. Plaintiff lost his grip and fell from his upper bunk, injuring his left side and right shoulder and leaving him with loss of movement, pain, and the possible need for surgery.

3

On July 15, 2009, Plaintiff went to the nurse's line and he was immediately sent to see Dr. Rohrdanz due to the condition of his shoulder. Dr. Rohrdanz examined Plaintiff's shoulder and ordered an x-ray stat. The x-ray confirmed shoulder damage and Dr. Rohrdanz said Plaintiff might need surgery.

On July 24, 2009, Plaintiff was summoned to see Dr. Mardian, who refused to reorder the pain medication that Dr. Paja had ordered on June 18 but which was never filled. Dr. Mardian discontinued the prescription and instead increased Plaintiff's dosage of Gabapentin. Plaintiff alleges that Gabapentin is a seizure medication and more recently, it has been discontinued as a pain reliever.

On September 2, 2009, Plaintiff submitted a request for an interview because the increased Gabapentin dosage was upsetting his stomach and it was not relieving his pain. Plaintiff was seen by Dr. Pido on September 3, 2009. Dr. Pido told Plaintiff that he suffered from arthritis, not a dislocated shoulder, and that they do not give out pain medication for arthritis. Plaintiff tried to explain that the pain medication was for his degenerative back and neck pain, not his more recent shoulder injury, but Dr. Pido refused to acknowledge what Plaintiff was saying and kept insisting that Plaintiff only suffered from arthritis. Plaintiff requested to have a previously-ordered MRI with a sedative because he has claustrophobia, but Dr. Pido told Plaintiff that the facility's health department does not provide MRIs unless Plaintiff underwent physical therapy. Plaintiff explained that an MRI had been ordered on several occasions but he was unable to undergo one because the sedative had not been provided. Dr. Pido refused to discuss anything further and refused to order any pain medication for Plaintiff.

On October 7, 2009, Plaintiff submitted another request for an interview due to his extreme back and shoulder pain; he was seen by a doctor on October 13, 2009. On October 17, 2009, Plaintiff's Gabapentin dosage was reduced back to the previously prescribed level. On November 13, 2009, Plaintiff saw yet another doctor who reordered all of Plaintiff's medications, but the Gabapentin was stopped.

On February 18, 2010, the Gabapentin prescription was renewed. The medication ran out several times and it took two to three weeks to refill it. On October 19, 2010, the Gabapentin was

1  permanently discontinued based on a decision that it would be prescribed for seizures only.  On
2  January 8, 2011, Plaintiff's medication again ran out after only thirty days.  Plaintiff received a refill
3  on January 18, 2011, which ran out on February 3, 2011; Plaintiff sent in a refill request on February
4  7, 2011.

5       Plaintiff alleges that as evidenced by the foregoing, there is an ongoing pattern of negligence
6  at PVSP, but Defendant Igbinosa refuses to address it and he responded to Plaintiff's inmate appeal
7  with aggression, denial, and defensiveness.  Plaintiff alleges that the reckless disregard for inmate
8  health and safety is an ongoing problem at the prison, and it is a high priority issue because it
9  violates federal and state law and court orders issued in the Madrid and Plata cases.[1]  Plaintiff alleges
10 that the number of complaints filed by inmates evidences the deliberate indifference and negligent
11 disregard for inmates, and that these issues have been brought to the attention of Defendant Yates,
12 Defendant Walker, Receiver J. Clark Kelso, and the Ombudsman, but the neglect remains.

13      Plaintiff alleges that doctors are removing chronic pain medications on a facility-wide basis
14 following the issuance of a memorandum by the Chief Medical Officer (Defendant Igbinosa), and
15 that pain medication is being crushed to powder form in violation of pharmaceutical instructions and
16 warnings.  Plaintiff alleges that he has been denied vital medications, which causes him to suffer
17 needless pain, and that all of the defendants were repeatedly informed of the situation but did
18 nothing, going so far as to mislead, deceive, or lie during the inmate appeals process.  Plaintiff
19 alleges that the Chief Medical Officer is responsible for policymaking, compliance with federal and
20 state laws and court orders, and meeting inmates' basic needs; and that the Warden (Defendant
21 Yates) has failed to step in and put a stop to the failure to meet Plaintiff's basic needs.  Finally,
22 Plaintiff alleges that the entire PVSP medical department has recklessly and cruelly violated inmates'
23 rights and the Hippocratic Oath.

24 ///
25 ///

---

[1] The Court takes judicial notice of Madrid, et al. v. Dept. of Corr. et al., case number 3:90-cv-03094-THE, and Plata, et al. v. Brown, et al., case number 3:01-cv-01351-THE, both of which are class actions in the Northern District of California challenging prison conditions of confinement.

B. **Eighth Amendment Medical Care Claim**

1. **Legal Standard**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 295 (1976)). The two-part test requires Plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference," and it may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Jett, 439 F.3d at 1096 (citing McGuckin, 974 F.2d at 1060 (internal quotations omitted)). Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin, 974 F.2d at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

Stating a claim against managerial or supervisory personnel, as Plaintiff seeks to do here, requires a showing of personal participation in the deprivation of rights. Iqbal, 129 S.Ct. at 1948-49; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934. Liability may not be imposed on managerial or supervisory personnel for violations committed by their subordinates under the theory of *respondeat superior*, Iqbal, 129 S.Ct. at 1948-49; Ewing, 588 F.3d at 1235, and they may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 633 F.3d 1191, 1196-97 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570

(9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

### 2. Discussion

#### a. Existence of a Serious Medical Need

"[T]he existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, . . . the presence of a medical condition that significantly affects an individual's daily activities, and . . . the existence of chronic or substantial pain" are indications of a serious medical need. Doty v. County of Lassen, 37 F.3d 540, 546 n.3 (9th Cir. 1994) (citation omitted); Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000). Plaintiff's allegations that he suffers from a degenerative neck and back problem which requires pain medication and that without the pain medication, his condition is debilitating are unquestionably sufficient to show the existence of a serious medical need. Lopez, 203 F.3d at 1131; Doty, 37 F.3d at 546 n.3; McGuckin, 974 F.2d at 1060.

#### b. Deliberate Indifference

In addition to adequately alleging the existence of a serious medial need, Plaintiff must allege sufficient facts to support the claim that each named defendant knowingly disregarding his serious medical needs. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Toguchi, 391 F.3d at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Toguchi, 391 F.3d at 1057 (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

##### 1) PVSP Medical Department

Plaintiff is attempting to impose liability on the PVSP Medical Department. As a state

agency, the California Department of Corrections and Rehabilitation (CDCR), including its individual institutions, is entitled to Eleventh Amendment immunity from suit. Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007). Therefore, the PVSP Medical Department is an improper defendant in this action and is entitled to dismissal. Id.

### 2)   Walker and Yates

Defendants Walker and Yates may not be held liable based on their positions of authority within CDCR and Plaintiff has not alleged any facts linking them to acts or omissions which suggest they were personally involved in acting with deliberate indifference to Plaintiff's medical needs. Iqbal, 129 S.Ct. at 1948-49; Ewing, 588 F.3d at 1235. The general allegation that Defendants Walker and Yates were put on notice as to the medical problems at PVSP is insufficient to state a plausible claim against them for violating Plaintiff's Eighth Amendment rights. Iqbal, 129 S.Ct. at 1949-50; Moss, 572 F.3d at 969.

### 3)   Igbinosa

In addition to attempting to impose liability on Defendant Igbinosa based on the same allegations made against Defendants Walker and Yates, Igbinosa was involved in responding to Plaintiff's inmate appeal. Although Plaintiff alleges that Defendant Igbinosa responded to his appeal with hostility, antagonism, aggression, defensiveness, and denial, and he attacked Plaintiff's requests, including pleas for his pain medication refills, the context is almost entirely unclear. The mere possibility of misconduct is insufficient to support a plausible claim for relief and the Court cannot discern whether Defendant Igbinosa was simply rude, whether he merely failed to tell Plaintiff what Plaintiff wanted to hear, or whether he knowingly disregarded a substantial risk of harm to Plaintiff's health. As a result, Plaintiff fails to state a viable claim against Defendant Igbinosa. Iqbal, 129 S.Ct. at 1949-50; Moss, 572 F.3d at 969.

### 4)   Yun

Finally, Defendant Yun was also involved via a review of Plaintiff's inmate appeal. Defendant Yun interviewed Plaintiff and allegedly failed to address the issue of Plaintiff's untimely medication refills. Defendant Yun cited the dates Plaintiff's medications were ordered but not the

dates they were refilled. This is simply insufficient to show Defendant Yun acted with deliberate indifference toward Plaintiff's medical needs. Iqbal, 129 S.Ct. at 1949-50; Moss, 572 F.3d at 969.

### c. Remedial Orders

Regarding the remedial orders issued in Madrid and Plata, these cases do not provide Plaintiff with an independent cause of action under section 1983 because the orders do not have the effect of creating or expanding Plaintiff's constitutional rights. See Cagle v. Sutherland, 334 F.3d 980, 986-87 (9th Cir. 2003) (consent decrees often go beyond constitutional minimum requirements, and do not create or expand rights); Green v. McKaskle, 788 F.2d 1116, 1123 (5th Cir. 1986) (remedial decrees remedy constitutional violations but do not create or enlarge constitutional rights).

In determining whether Plaintiff states a claim, the Court looks to whether Plaintiff's factual allegations support his contention that his constitutional rights were violated rather than to simply whether or not there was an alleged breach of an agreement in a different case. See Cagle, 334 F.3d at 986-87; Green, 788 F.2d at 1123; see also Garcia v. Stewart, No. C 06-6735 MMC (PR), 2009 WL 688887, at *7-8 (N.D.Cal. Mar. 16, 2009) (section 1983 claim based on non-compliance with Castillo agreement not cognizable). Here, for the reasons set forth above, Plaintiff's amended complaint does not set forth sufficient facts to state a plausible claim for relief against Defendants Walker, Yates, Igbinosa, and Yun for the violation of Plaintiff's rights under the Eighth Amendment. Iqbal, 129 S.Ct. at 1949-50; Moss, 572 F.3d at 969.

### IV. Conclusion and Recommendation

Plaintiff's amended complaint fails to state a claim against Defendants PVSP Medical Department, Walker, Yates, Igbinosa, and Yun for violation of the Eighth Amendment. Plaintiff was previously given notice of the deficiencies in his claims and leave to amend, but he was unable to state a claim. Lopez, 203 F.3d at 1130; Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Accordingly, the Court HEREBY RECOMMENDS that this action be DISMISSED, with prejudice, for failure to state a claim under section 1983.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30)**

**days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

| **Dated:** | **July 5, 2011** | /s/ Sheila K. Oberto |
|---|---|---|
| | | UNITED STATES MAGISTRATE JUDGE |